AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
Sep 05 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ VeronicaCota   DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  24MJ8764
Dark Blue Apple iPhone )
Model: Unknown )
Seized as FP& F: 2024255400019901 Item: 007 )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the   Southern   District of   California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
   telephone   *(specify reliable electronic means)*.

Date:   09/05/2024

Judge's signature

City and state:   EL CENTRO, CALIFORNIA      HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**     Dark Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 007
Seized from Jose Manuel CORRALES
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 21, 2024, up to and including August 21, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**     Gray Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 006
Seized from Jose Manuel CORRALES
**(Target Device #1)**

**A-2:**     Dark Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 007
Seized from Jose Manuel CORRALES
**(Target Device #2)**

**A-3:**     Gray Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 002
Seized from Bryan Misael AGUAYO
**(Target Device #3)**

**A-4:**     Pink Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 003
Seized from Elizabeth HERNANDEZ-Velasco
**(Target Device #4)**

as further described in Attachments A-1 to A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Jose Manuel CORRALES (CORRALES) for transportation of illegal aliens Bryan Misael AGUAYO (AGUAYO), and Elizabeth HERNANDEZ-Velasco (HERNANDEZ

(collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from CORRALES and the Material Witnesses on or about, August 20, 2024, incident to the arrest of CORRALES, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

2

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

 a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

 b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

 c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

 d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

 e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On August 20, 2024, the Calexico Station's ASU was conducting surveillance approximately 25 miles east of Calexico Port of Entry. At approximately 7:08 p.m., BPA J. Chrisley, an ASU member assigned to the Radio Video Surveillance Systems (RVSS), observed one suspected illegal alien climbing the fence south into Mexico. This led BPA Chrisley to believe there might be ongoing illicit activity. BPA Chrisley panned the RVSS cameras north to search for subjects that may have entered the United States illegally. BPA H. Hacegaba was patrolling the border near this location. BPA Hacegaba observed footprints in the sand indicating an illegal entry were made. BPA Hacegaba relayed this information via service radio.

11. BPA Chrisley was panning the RVSS cameras north, he observed two suspected illegal aliens hiding in large bush approximately 20 feet south of Interstate 8 (I-8). The two suspected illegal aliens were approximately two miles west of "Drop 2." BPA A. Pena, an ASU member operating an unmarked service vehicle and wearing plain clothes, was positioned approximately one-half mile east of the location of the two suspected illegal aliens. As BPA Chrisley was relaying the position of the two suspected illegal aliens to ASU members, BPA Pena observed a small sedan with one inoperable taillight traveling eastbound on I-8 at a slow rate of speed.

12. At approximately 7:38 p.m., BPA Chrisley and BPA Pena observed the two suspected illegal aliens running north across I-8. BPA Chrisley observed the two suspected illegal aliens lay down north of I-8. The two suspected illegal aliens remained hidden north of I-8 for approximately 20 minutes. At 7:52 p.m., BPA Chrisley observed a small sedan stop along the northern shoulder of I-8. The small sedan, later identified as a silver 2013 Hyundai Sonata, was reversing in the northern shoulder of I-8 in proximity of the two suspected illegal aliens. BPA Pena was able to see the Hyundai as it was reversing on the northern shoulder of I-8. The Hyundai came to a stop and signaled to merge onto the

westbound lanes of I-8. BPA Chrisley informed ASU members that the two suspected illegal aliens continued to hide north of I-8.

13. At approximately 7:56 p.m., Supervisory Border Patrol Agent (SBPA) W. Schwaderer, an ASU member operating an unmarked service vehicle and wearing plain clothes, witnessed the Hyundai exit I-8 at a location known as the "East Y." The East Y is the eastern intersection of Highway 98 and I-8. SBPA Schwaderer observed the Hyundai travel south on the overpass and merge onto the eastbound lanes of I-8. SBPA Schwaderer proceeded to follow the Hyundai. The Hyundai traveled eastbound on I-8 for approximately seven miles reaching the Gordon's Well exit on I-8. As the Hyundai approached the Gordon's exit, the Hyundai signaled to exit I-8. SBPA Schwaderer observed the Hyundai travel north on the overpass and merge onto the westbound lanes of I-8. SBPA Schwaderer relayed this information via service radio.

14. As the Hyundai merged onto the westbound lanes of I-8, SBPA Schwaderer continued to follow it. At approximately 8:10 p.m., the Hyundai was approaching the location of the two suspected illegal aliens that were still hiding north of I-8. BPA Chrisley, who remained in the RVSS room, observed the Hyundai come to a complete stop approximately 100 feet east of the suspected illegal aliens. The Hyundai slowly traveled west along the northern shoulder of I-8. As the Hyundai came closer to the two suspected illegal aliens, the two suspected illegal aliens got up from their hiding spot and ran towards the Hyundai. The two suspected illegal aliens boarded the rear passenger area of the Hyundai. SBPA Schwaderer observed the Hyundai merge back onto I-8 and travel westbound. BPA Chrisley also witnessed this through the RVSS cameras. Troy 168, an Air and Marine Officer, was flying near this area and witnessed the two suspected illegal aliens board the Hyundai.

15. SBPA Schwaderer followed the Hyundai at a distance as it was traveling westbound on I-8. BPA P. Durazo, an ASU member operating a fully marked service vehicle and wearing a full-service uniform, was closely following SBPA Schwaderer to assist with the vehicle stop. The Hyundai traveled approximately 10 miles before SBPA

Schwaderer and BPA Durazo initiated the vehicle stop. BPA Durazo and SBPA Schwaderer activated their emergency lights and siren signaling the Hyundai to stop. The Hyundai slowly came to a stop on the northern shoulder of I-8.

16. SBPA Schwaderer, BPA Durazo, BPA S. Swiatkowski, and BPA Pena approached the Hyundai. BPA Durazo and SBPA Schwaderer approached the driver side of the Hyundai and identified themselves as Border Patrol Agents. As SBPA Schwaderer was approaching the driver side of the Hyundai, he observed one male in the driver seat of the Hyundai, later identified as Jose Manuel CORRALES. SBPA Schwaderer ordered CORRALES to exit the vehicle, to which he complied. SBPA Schwaderer questioned CORRALES regarding his citizenship. CORRALES stated he is a United States citizen. BPA Durazo escorted CORRALES in the rear passenger area of his service vehicle.

17. BPA Swiatkowski and BPA Pena approached the Hyundai from the passenger side of the vehicle. BPA Swiatkowski and BPA Pena identified themselves as Border Patrol Agents. BPA Swiatkowski observed one male front seat passenger, who was identified as a United States citizen. BPA Swiatkowski opened the front passenger door and ordered the front male passenger to exit the Hyundai. While BPA Swiatkowski was dealing with the front male passenger, BPA Pena opened the rear passenger door of the Hyundai and observed two rear seat passengers wearing all tan clothing and covered with sand and debris from the bushes in the desert. BPA Pena questioned both rear passengers regarding their citizenship. Both rear passengers stated they were citizens of Mexico without the proper documents to be in the United States legally. BPA Pena ordered both illegal aliens to exit the Hyundai, to which they complied. BPA Pena informed both illegal aliens they were under arrest for being in the United States illegally. CORRALES was arrested for 8 USC 1324 Alien Smuggling. CORRALES and the two smuggled aliens were transported to the Calexico Border Patrol Station for further processing and interviews.

18. During a post-Miranda interview, CORRALES stated that he lives in Tulare, California and was visiting his uncle that lives in Mexicali, Mexico today. CORRALES stated he did not know the people he picked up along the Interstate. CORRALES stated he

7

arrived in Mexicali, Mexico about a week ago. CORRALES stated he saw these people walking so he decided to turn around and pick them up. CORRALES stated the people were walking on the street. CORRALES stated he was headed to Phoenix, Arizona to visit his aunt. CORRALES stated he did not know where he was going to take the people he picked up. CORRALES was adamant he was telling the "truth" even though he could not explain why he picked up the people. CORRALES subsequently admitted to lying to BPA Durazo at the location of vehicle stop about the people he picked up being his friends. CORRALES stated he knows/understands that what he did today was illegal.

19. Material Witness AGUAYO stated he was born in Agua Prieta, Sonora. AGUAYO stated he arrived at Mexicali, Baja California, Mexico on August 19, 2024. AGUAYO stated his uncle made the smuggling arrangements for him. AGUAYO stated he was going to be charged $9,000.00 USD to be smuggled into the United States. AGUAYO was traveling to Tulare, California

20. Material Witness HERNANDEZ-Velasco stated she was born in Oaxaca and currently lives in Hermosillo, Sonora. HERNANDEZ stated she arrived at Mexicali, Baja California, Mexico approximately three weeks ago. HERNANDEZ stated her uncle made the smuggling arrangements for her. HERNANDEZ doesn't know how much her uncle was going to pay. HERNANDEZ was travelling to Indianapolis.

21. During a search incident to arrest of CORRALES and the Material Witnesses, four cellphones were found: a gray Samsung cellphone (Target Device #1) was found in the center console and a dark blue Apple iPhone (Target Device #2) was found in the center console by BPA Schwaderer. CORRALES claimed ownership of both these cellphones. A gray Motorola cellphone (Target Device #3) was found in AGUAYO's right hand by BPA Pena and AGUAYO claimed ownership of this cellphone. A pink Samsung cellphone (Target Device #4) was found inside HERNANDEZ's shirt by BPA Pena and HERNANDEZ claimed ownership of this cellphone.  All cellphones seized as evidence.

22. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may

require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on July 21, 2024, up to and including August 21, 2024, the day after the arrest of CORRALES, and the Material Witnesses.

## METHODOLOGY

23. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

26. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that CORRALES and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by CORRALES, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 5th day of September, 2024.

_____1:59 p.m._____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-1:**</u>   Gray Samsung Cellphone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 006
Seized from Jose Manuel CORRALES
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:** Dark Blue Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 007
Seized from Jose Manuel CORRALES
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**    Gray Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400019901 Item: 002
Seized from Bryan Misael AGUAYO
**(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

<u>**A-4:**</u>          Pink Samsung Cellphone
             Model: Unknown
             Seized as FP& F: 2024255400019901 Item: 003
             Seized from Elizabeth HERNANDEZ-Velasco
             **(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-4 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of July 21, 2024, up to and including August 21, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.